**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ron J. Huddleston, | No. CV-17-02690-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Scottsdale Healthcare Hospitals Incorporated, | |
| Defendant. | |

At issue is Defendant Scottsdale Healthcare Hospitals, Inc.'s Motion to Dismiss for Failure to State a Claim (Doc. 7, Mot.), to which Plaintiff Ron J. Huddleston filed a Response (Doc. 10, Resp.), and Defendant filed a Reply (Doc. 12, Reply.) The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). In this Order, the Court will also resolve Defendant's state court Motion to Dismiss Count Four of the Complaint (Doc. 5) and Plaintiff's Motion to Remand (Doc. 11).

**I.  BACKGROUND**

According to the allegations in the Complaint, on or around February 10, 2016, Plaintiff accepted Defendant's employment offer to serve as the Senior Executive Vice President of the Foundation for HonorHealth. (Doc. 1-1 at 1-48, Compl. ¶ 5.) The offer letter that Plaintiff accepted—which Plaintiff attached to the Complaint—included the following provision:

- 1 -

> Upon receipt of the attached executed "non-compete, non-disclosure" document, you will be provided with a nine-month severance package in the event of involuntary termination, for reasons other than cause. A copy of the SLHN Severance Plan is attached for your review.

(Compl. Ex. A at 2.)

The attached SLHN Severance Plan stated:

> The Plan is intended to be a severance pay plan within the meaning of [Employment Retirement Income Security Act ("ERISA")] § 3(2)(B)(i). The Plan is intended to provide severance pay to a select group of management of highly compensated employees as such term is described under ERISA § 201(a)(2), § 301(a)(3), and § 401(a)(1).

(Compl. Ex. D Art. 1.3.) The Plan also included a Claims Procedure, which provided that a beneficiary must file any claim for severance pay with the Plan Administrator under Department of Labor regulations and using specified procedures. (Compl. Ex. D. Art. 8.)

Around the same time as he accepted Defendant's employment offer, Plaintiff entered into an Agreement/Covenant Not to Compete with Defendant. (Compl. Ex. B.) Plaintiff agreed that, upon termination of employment, he would not work to compete with Defendant for a certain period of time in a certain geographical region, but "only . . . if severance as stated above in the February 10, 2016 Employment Offer is accepted" by Plaintiff as consideration. (Compl. Ex. B § 1.)

On February 27, 2017, Defendant sent Plaintiff a letter stating that (1) it had amended the HonorHealth Severance Benefit Plan, which had superseded the SLHN Severance Plan; (2) Associate Vice Presidents were "no longer an eligible class of participants in the Plan;" and (3) as a result, "the Agreement/Covenant Not to Compete [Plaintiff] signed when [Plaintiff] became an Associate Vice President, which had been a condition of receiving severance under the Plan, is null and void." (Compl. Ex. C.) On or around May 15, 2017, Defendant terminated Plaintiff without cause. (Compl. ¶ 8.) Defendant did not pay Plaintiff's demanded severance pay because the February 27, 2017 letter terminated the Agreement/Covenant Not to Compete and the associated consideration in the form of a severance pay package under the Plan.

On July 19, 2017, Plaintiff filed his Complaint in Arizona state court, alleging five state law causes of action: breach of contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel; treble wages pursuant to A.R.S. § 23-355; and declaratory judgment. (Compl. ¶¶ 12-36.) All five counts seek damages arising out of the Defendant's failure to pay Plaintiff the severance pay package. (Compl. ¶¶ 15-34.) Defendant removed this action from state court (Doc. 1) and now moves to dismiss all of Plaintiff's claims on the grounds that they are preempted by ERISA and Plaintiff failed to exhaust his administrative remedies prior to bringing this action.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

A complaint must include "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B. Complete Preemption under ERISA § 502(a)(1)(B)

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove to federal district court an action brought in state court for which district courts have original jurisdiction. Federal jurisdiction can be conferred in instances "where Congress intended the scope of a federal law to be so broad as to entirely replace any state law claim." *E.g.*, *Lodi Memorial Hosp. Ass'n v. Tiger Lines, LLC*, No. 2:15-cv-00319-MCE-KJN, 2015 WL 5009093 at *4 (E.D. Cal. Aug. 20, 2015).

Where complete preemption by ERISA is implicated, the complaint is converted from "an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). Congress enacted ERISA to prevent mismanagement of accumulated funds that finance employee benefits and to ensure payment of employee benefits from such funds. *Massachusetts v. Morash*, 490 U.S. 107, 107 (1989). Specifically, § 502(a)(1)(B) of ERISA permits an ERISA plan participant to file a civil action where benefits are "due to him under terms of the plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* (citing 29 U.S.C. § 1132(a)(1)(B)). The Supreme Court has recognized that, in § 502(a) of ERISA, Congress intended to "completely pre-empt this subject area" such that any such claim "is necessarily federal in character." *Metropolitan Life*, 481 U.S. 58 at 64.

Complete preemption under § 502(a) is "really a jurisdictional rather than a preemption doctrine, [because it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009). The Supreme Court has formulated a two-prong test to determine whether a state-law cause of action is completely preempted: (1) "an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by defendant's actions." *Id.* at 946 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210

(2004)). "A state-law action is completely preempted by § 502(a)(1)(B) only if both prongs of the [*Davila*] test are satisfied." *Id.* at 947. "The basic thrust of the pre-emption clause . . . was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995).

## III. ANALYSIS

### A. *Davila*'s First Prong: Whether Plaintiff's Causes of Action Fall within the Scope of ERISA § 502(a)(1)(B)

In its Motion to Dismiss, Defendant argues that all of Plaintiff's state law causes of action arise out of a benefit Defendant offered under the SLHN Severance Plan and, because the Plan specified that it was an ERISA plan, Plaintiff's claims are preempted by ERISA. (Mot. at 4-5; Reply at 3-5.) In response, Plaintiff argues that he "has not asserted any causes of action as a plan beneficiary to recover benefits under an ERISA plan," but rather "is suing to recover on his independent state-law-based breach of written contract obligations owed by Defendant." (Resp. at 4.) To the extent Plaintiff asks the Court to rely purely on the allegations and claims as styled in the Complaint and not the language of the agreements between the parties underlying Plaintiff's claims—agreements that Plaintiff attached to the Complaint—the Court declines that invitation. A court should consider "material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).

The threshold question before the Court is whether the agreement to provide Plaintiff severance pay was a severance pay plan under ERISA. The parties do not dispute that they entered into a contract for Plaintiff's employment. Under Arizona law, the interpretation of a contract is a question of law for the court to decide. *See Hadley v. Sw. Props., Inc.*, 570 P.2d 190, 193 (Ariz. 1977); *Power P.E.O., Inc. v. Emps. Ins. of Wausau*, 38 P.3d 1224, 1228 (Ariz. Ct. App. 2002); *see also Abrams v. Horizon Corp.*,

669 P.2d 51, 57 (Ariz. 1983) (stating that the determination of whether a contract provision is ambiguous is a question of law). The court must give effect to a contract provision as written if it is clear and unambiguous. *Hadley*, 570 P.2d at 193 (citation omitted).

The severance pay provision of the employment agreement explicitly referred to the terms of the SLHN Severance Plan, which was incorporated as an attachment to the agreement that Plaintiff signed. (Compl. Ex. A at 2.) The agreement thus unambiguously provided that severance would be paid pursuant to the terms of the SLHN Severance Plan. Indeed, the employment agreement lacked any details of severance pay beyond the term "nine-month severance package," and the actual definition of that compensation "package"—which Plaintiff explicitly seeks as damages in this lawsuit—was provided in the SLHN Severance Plan, not the employment agreement. (Compl. Ex. D.) The Plan, in turn, unambiguously provided that it was "a severance pay plan within the meaning of ERISA § 3(2)(B)(i)," codified at 29 U.S.C. § 1002(2)(B)(i). (Compl. Ex. D Art. 1.3.)

Plaintiff attempts to analogize this case to *Marin General Hospital*, 581 F.3d at 946, to argue that his claims are independent from the SLHN Severance Plan. (Resp. at 6-7.) There, Marin General Hospital ("the Hospital") called Medical Benefits Administrators of MD, Inc. ("MBAMD") to confirm a patient's health insurance under an ERISA plan provided by his employer. *Id.* at 943. MBAMD orally confirmed the insurance coverage, authorized the treatment, and agreed to cover 90% of the medical expenses. *Id.* After the procedure, MBAMD refused to pay the full amount of 90% of the expenses. *Id.* at 947. The Ninth Circuit found that because all of the Hospital's claims arose out of an alleged oral contract for the additional amount owed, the asserted obligation stemmed from the oral contract, not an ERISA plan. *Id.* at 948.

Unlike *Marin*, Plaintiff is not seeking benefits outside of the ERISA plan via an independent agreement. Instead, the Complaint and incorporated documents show that Plaintiff's claims arise from a "nine month severance package" Defendant offered under the SLHN Severance Plan, which unambiguously provided that it was an ERISA plan.

Pursuant to the terms of his employment agreement, Plaintiff could have sought administrative remedies and ultimately brought his claims to court for severance pay under ERISA § 502(a)(1)(B) after Defendant informed him he was no longer eligible for the offered severance package. (*See* Compl. Ex. D Art. 8.)

Moreover, the relief Plaintiff seeks does not fall outside of the employment benefits Congress meant to safeguard from abuse and mismanagement of funds in enacting ERISA. *See Morash*, 490 U.S. at 112. With regard to ERISA's objective of regulating employee benefit plans, the Supreme Court noted that "plans to pay employees severance benefits, which are payable *only* upon termination of employment, are employee welfare benefit plans within the meaning of the Act." *Id.* at 116 (citations omitted). The first *Davila* prong is thus satisfied.

### B. *Davila*'s Second Prong: Whether Defendant's Actions Implicate Any Other Independent Legal Duty

With regard to *Davila*'s second prong, Defendant argues that none of Plaintiff's state-law causes of action are based on legal duties independent of those imposed by ERISA under Defendant's ERISA plan. (Mot. at 6.) In *Davila*, the Supreme Court rejected the plaintiff's contention that claims arose independent of ERISA because the liability existed only through the defendant's administration of the ERISA plan. 542 U.S. at 210-13; *see also In re: Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI, 2017 WL 539578, at *18 (D. Or. Feb. 9, 2017) ("No independent legal duty exists where interpretation of the terms of the ERISA-regulated benefits plan forms an essential part of the claim and where the defendant's liability exists only due to its administration of the ERISA-regulated plan.")

Here, Plaintiff attempts to analogize this case to *Pierce v. Wells Fargo Bank, N.A.*, 380 Fed. App'x 635 (9th Cir. 2010), an unpublished memorandum decision. (Resp. at 9-10.) In *Pierce*, the Ninth Circuit reversed the district court by finding the plaintiff's allegations that his acquiring employer would provide "severance benefits of the type and amount specified" in the acquired employer's ERISA-governed plan could be reasonably

read to allege that the plaintiff was only offered a specified amount "equivalent" to that under the ERISA plan, and not necessarily an ERISA-governed severance pay plan. *Id.* at 636; *Pierce v. Wells Fargo Bank, N.A.*, No. C 08-1554 JF (HRL), 2009 WL 1258591, at *6, 10 (N.D. Cal. May 5, 2009), *vacated and remanded*. As such, the second *Davila* prong was not satisfied because the plaintiff "was claiming this amount precisely because it is not owed under [his] plan," and the plaintiff's claims arose from an "independent legal duty that is implicated by the defendant's actions." *Pierce*, 380 Fed. App'x at 636.

*Pierce*, to the extent it is authority, is notably distinguishable from this case. Plaintiff's Complaint and the agreements upon which it relies do not raise any suggestion that Plaintiff was offered a severance package "of the type and amount" or "equivalent" to severance amounts specified in the SLHN Severance Plan. Rather, Defendant offered Plaintiff a "nine month severance package" under the terms of the attached SLHN Severance Plan, an ERISA plan. Defendant's legal duties thus arose from an ERISA plan. *See Davila*, 542 U.S. at 210-13. Because there is no other independent legal duty implicated by Defendant's actions, the second *Davila* prong is satisfied, and all of Plaintiff's claims are preempted by ERISA.

### C. Failure to Pursue Administrative Remedies

To bring an action arising from an ERISA plan, a claimant is required to "avail himself or herself of a plan's internal review procedures before bringing suit in federal court." *Diaz v. United Agr. Emp. Welfare Benefits Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995). Article 8 of the SLHN Severance Plan established claims procedures for any claim of benefit under the Plan, including procedures for denials, notice, appeals, and review. (*See* Compl. Ex. D Art. 8.) It also provided for the claimant's right to bring an action under ERISA § 502(a) once the internal claims procedure is fully exhausted. (Compl. Ex. D Art. 8.) Plaintiff concedes he did not bring his claim for severance pay through the SLHN Severance Plan's administrative review process before filing this action. (Resp. at 10-11.) Because Plaintiff failed to exhaust his administrative remedies as

required for claims arising from ERISA-governed plans, the Court must dismiss his claims. *Diaz*, 50 F.3d at 1483, 1486.

**IT IS THEREFORE ORDERED** granting Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 7).

**IT IS FURTHER ORDERED** denying as moot Defendant's state court Motion to Dismiss (Doc. 5), and denying Plaintiff's Motion to Remand (Doc. 11).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendant and close this case.

Dated this 9th day of November, 2017.

Honorable John J. Tuchi
United States District Judge